## THE LAURA LEE.[1]

## ST. LOUIS & VICKSBURGH ANCHOR LINE CO. and others *v.* RED RIVER COAST LINE.[1]

*(District Court, E. D. Louisiana.   June 23, 1885.)*

1. **DAMAGES BY COLLISION.**

    Where damages have occurred by reason of a collision, and the court has ordered a division of the loss, both parties having been found to be in fault, the value of a vessel that has been totally lost is not the amount she was worth to her owners when in use, nor what they would have been willing to sell her for. In a sale, a price is often paid for the consent of the vendor much above the market value of the thing sold. When a vessel, by reason of a collision, becomes a wreck, the power on the part of her owners to consent to part with her ceased, and defendants should not now be required to contribute any sum beyond her commercial value,—the amount she could have been sold for in open market.

2. **SAME—COMPUTATION OF DAMAGES.**

    In estimating the value of a Mississippi river steam-boat destroyed by collision, upon which all necessary repairs had been made from time to time, the rule is that after the first year the boat is worth 20 per cent. less than she was worth when she was built; the second year the 20 per cent. should be taken from her value at the end of the first year, and the result will represent her value at the end of the second year, and so on through the remaining years.

In Admiralty.   S. C. 22 FED. REP. 347.

*Charles B. Singleton, Richard H. Browne,* and *B. F. Choate,* for libelants.

*W. S. Benedict* and *Albert H. Leonard,* for claimants.

BOARMAN, J.   The question involved in this cause now is as to the amount of damages resulting from the collision between the steamboats City of Greenville and Laura Lee, which damages, or loss, according to the finding and decree of Judge BILLINGS, before whom the case was recently tried, has to be borne equally by the respective owners of these steam-boats.   The City of Greenville was almost a total loss.   Some articles of small value, constituting a portion of her equipment, were saved; the damage to the Lee was comparatively slight. The evidence as to the value of the Greenville is conflicting, as is always more or less the case when the court is called on to adjust such losses.   The libelants' witnesses vary in their estimation of her value from $90,000 to $125,000; the respondents say she was worth from $30,000 to $37,000.

Notwithstanding this conflict of testimony, the court has, by a careful analysis of the evidence, and by the aid of the counsel on either side, been enabled to reach a satisfactory conclusion as to the amount of the loss sustained by the owners of the Greenville; there is no dispute as to the amount of the loss or damage sustained by the Lee. The libelants insist that the value of their boat was the amount she was worth to them when in their use, and that they are now entitled, in the adjustment of these losses, to have their boat so valued.

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

I do not agree with their method of estimating their loss; it may be, for the sake of this argument, conceded that the libelants rightly considered their boat worth more to them than she would have been to any one else; it may be that her owners would have felt justified in refusing to sell her for what may have been her commercial value at the time of the collision. In adjusting the loss claimed to have been incurred by the libelants, we must keep in mind the fact that the Greenville is lost to all persons concerned, and that for the purposes of this suit we must consider that no one, more than another, is to blame for her loss; besides, we should consider that in every sale the consent of the owner of the thing sold must be obtained, and that it is often the case that such consent to sell has to be paid for by the purchaser in addition to the sum which may in the market fully represent the value of the thing sold. When the Greenville became a wreck, the power on the part of the libelants to consent to part with her ceased, and the owners of the Lee should not now be required to contribute any sum which represents the amount which the owners of the Greenville might have felt justified in asking from a purchaser for their consent to be deprived of her especial usefulness to them.

I have carefully examined and weighed the evidence presented by either side, for the purpose of reaching a satisfactory conclusion as to the value of the Greenville in the market at the time she was lost; her commercial value is the sum she could have been sold for in open market. Under the view I have of the law in this case, I have not been much aided by the witnesses for libelants. Scudder, the president, and Keyser, the secretary, of libelant company, state what they consider the Greenville was worth to the company. I presume their opinion as to what she was worth to the company had its source in their knowledge of her usefulness in the past, and was based upon their belief, which could be only speculative, in her continuing to be as useful in the future, under the libelants' management. I regret that these witnesses confined so much of their evidence to making estimates of the lost boat's usefulness and value to the libelants, rather than to informing us of her commercial value, for we shall deem it proper to consider only her market or commercial value as the measure of libelants' loss. John Bird and Massingale, neither of them pretending to be experts in estimating the value of steam-boats, think the lost boat was worth from $110,000 to $125,000 to the libelants. Other witnesses, who claim more or less to know the value of steam-boats, say she was worth from $90,000, to $125,000 to libelants. Some of them place her commercial value at $90,000. None of them think she was worth less than that sum.

Among these witnesses, Haarstick, Morse, and O'Neil estimate the cost of the boat at $120,000. As she in fact cost about $85,500, they are in error, and their evidence as to the value of the boat cannot be very valuable to the court. With the exception of Scudder, Keyser, and Howard, the witnesses offered by libelants do not know

the original cost of the boat. Howard seems to be the only one among them that knows the age of the boat. Without such knowledge it does not appear that such witnesses are very competent to fix the value of the boat. Besides, the statements of most of these witnesses are not accompanied by reasons for their opinions and conclusions. There are, however, in this case admitted facts which have materially assisted the court in arriving at the commercial value of the lost boat: (1) She cost originally, including her full equipment, $85,000 or $86,000; say, $85,500. (2) She was at the time of the collision within a few days of four years old. (3) She received during her life *only* such repairs as were necessary from time to time to keep her in good running order.

In cases of this kind we often find it proper to consider and take cognizance of things or facts other than those which may be in the evidence. And whether the causes which make steam-boats waste and perish with use and time are stated in the evidence or not, we know that such boats are perishable property, and that age and constant use, amid the perils that attend the navigation of our western waters, cannot be said, in truth, to enhance their value.

Under the most favorable conditions and circumstances, and in the very nature of their construction and uses, steam-boats must, in the wear and. tear that attends active employment, day by day, diminish in usefulness and value, and their average life must necessarily be short. So, in our judgment, the Greenville, on the day of her loss, must have been worth much less to her owners, as well as to any one else, than her original cost; and we can hardly be expected, in the view of such well-known facts, to consider as serious the evidence of libelants that suggests that she was worth more when she was four years old than she was when she began her active life. Common experience, and the common knowledge that belongs to mankind, forbids that much weight should be given by any one to the evidence of witnesses who say the boat at the time of her loss was worth from $5,000 to $35,000 more than she cost when she was new. Starting from the fact that the boat and her equipment cost $85,500, her commercial value may be found with reasonable accuracy by deducting from that sum the amount of depreciation in value during the four years of her life. Five witnesses, wholly disinterested in this matter, and well known among all persons interested in steam-boats on the Mississippi river as men of large and valuable experience in such matters as make them expert witnesses, viz., L. N. Cooper, O. F. Vallette, Matt. Howe, R. L. Robertson, and Capt. Kenneson, agree generally in fixing 20 per cent. a year as a fair estimate of the depreciation in the value of a steam-boat under the conditions and circumstances which attended the life of the Greenville.

The testimony shows that Cooper has been engaged for 25 years as inspector of steam-boats at New Orleans for the board of underwriters, and is now so employed. The other named witnesses are men of great

experience in such things and affairs as make them competent judges of the use and value of steam-boats, and all of them accompany their statements with reasons for the opinions they express, which appear to the court to entitle their judgments to great consideration. The rule which they lay down is a general one, and it should apply in this case, unless there is some good reason for denying its force in this case. The 20 per cent. rule assumes that all repairs necessary to keep the boat in good condition have been, from time to time, made. The rule, as explained, is that after the first year the boat is worth 20 per cent. less than she was worth when she was built; the second year the 20 per cent. should be taken from her value at the end of the first year, and the result will represent her value at the end of the second year, and so on through the remaining years. Applying this rule, the Greenville was worth, at the time she was lost, $34,021. The opinion of Cooper and the other named witnesses, to whose judgment the court is disposed to give great weight, is supported in a general way by the evidence of some other disinterested persons of large experience in such matters as we are now considering, among them Capts. Bell, Gould, and Kouns. The opinions of these expert witnesses are grounded substantially on the same reasons that are given by Cooper and the other witnesses named with him.

In addition to these witnesses, we have strongly corroborative evidence from a number of other experienced steam-boat men, some of whom are more or less interested in the result of this suit. A strong feature in all the evidence of respondents' witnesses is that they, though differing some as to the per cent. of yearly loss, all agree as to the method of estimating the loss or depreciation attending the use and wear of steam-boats. The libelants' witnesses suggest no uniform rule for estimating such depreciation, while the respondents' witnesses, agreeing substantially among themselves, base their statements on such sound reasons as must carry conviction to the mind. Leaving further discussion of the method by which it seems the yearly depreciation in value of a boat should be obtained, we find from evidence of respondents' witnesses, who give the cost price of certain steam-boats, and the sale price of the same boats, that steam-boats certainly depreciate greatly in value from year to year. Their testimony shows sales of a number of boats on the Mississippi river, among them the steamer Halliday, built at the same time with the Greenville, of about the same dimensions and about as good a boat, cost $75,000, sold at the end of two and a half years for $50,000; the Cannon cost $135,000, when three years old offered for sale for $50,000, and no one bought her; the Fanchon cost $30,000, sold when three years old at $12,500; the Yazoo Valley cost $38,000, at two and a half years sold for $16,000; the R. R. Springer cost $80,-000, was offered when four years old for $35,000, and found no purchaser; the Maria Louise cost $45,000, at seven years old sold for $10,000. The evidence shows that the boats named were kept in

good running order, and were in such order when they were sold or offered for sale.

I conclude that the value of the Greenville must be determined by the 20 per cent. rule, rather than from the unsatisfactory testimony of the libelants' witnesses, and that the boat should, at the time of the collision, be valued at $35,021. The furniture, or a portion of it, seemed to be the only things saved from the wreck, and that sold for $987.51. What became of other valuable things that were saved, or might have been saved, the court is not informed by the evidence. Deducting the sum for the furniture, $987.51, and we find the loss to libelants to be $34,033. The damages sustained by the Lee, as shown by uncontradicted evidence, is $1,906.96; the respondents are liable for one-half of $34,033; libelants are liable for one-half of damage to Lee, $953.48; deduct this sum from $17,016.78, and we find $16,033.22 to be the amount for which decree will be rendered in favor of libelants. The cost, including the master's fee, to be borne equally.